# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 13-03239-MC-S-FJG ) |
| KEVIN TINNEY, | ) ) ) |
| Respondent. | ) |

# ORDER

Currently pending before the Court is respondent's Objections to Magistrate Rush's Report and Recommendation regarding the Government's Petition for Summary Enforcement of Administrative Subpoena (Docs. # 18).

## I.     Factual Background

Respondent Kevin Tinney is a pilot with JetBlue Airways and was the first officer of Flight 412, traveling from San Diego to Boston on September 21, 2012. At 5:31 a.m., the aircraft was instructed by the Cleveland air traffic control center to contact Boston air traffic control center on a specific frequency and to make a changeover. However, the aircraft did not contact Boston air traffic control until 6:07 a.m. There was a period of approximately 36 minutes when air traffic control had no contact with the aircraft. When radio contact was re-established with Flight 412, it was flying at 37,000 feet over Boston, when it should have been flying at approximately 5,000 feet. Tinney voluntarily submitted the issues surrounding this particular flight to an FAA program known as the

ASAP program ("Aviation Safety Aircraft Program"). The ASAP program is a joint FAA/air carrier program that allows aviation employees to self-report violations to air carriers and the FAA without fear of reprisal. The ASAP program is memorialized in a document known as a Memorandum of Understanding ("MOU"). The MOU is titled "JetBlue Airways Aviation Safety Action Program (ASAP) for Pilots Memorandum of Understanding. The MOU was signed by the parties on April 17, 2012 and May 1, 2012. When safety issues are reported to the ASAP, they are reviewed by an Event Review Committee ("ERC"). The committee is comprised of representatives of the air carrier, and the FAA. The ERC reviews reports which are submitted and determines whether the reports qualify for inclusion in the program and will propose solutions to the problems reported. If a voluntarily reported safety issue meets the criteria for acceptance into the ASAP program, the FAA will not pursue enforcement action against the certificate holder who has reported the event.

At the conclusion of Flight 421, Tinney joined the Captain in timely reporting the events that occurred during the flight to the ASAP. The ERC accepted Tinney's report on October 9, 2012 and Tinney voluntarily participated in the investigation. One month later Tinney learned that he had been rejected from the ASAP and on November 15, 2012, the FAA issued a Letter of Investigation to Tinney regarding this event. It is unclear from the pleadings or the hearing testimony exactly why Tinney's report was rejected from the program. On January 25, 2013, the FAA issued an administrative subpoena to Tinney seeking testimony from him in the "Matter of JetBlue Flight 412 on

September 21, 2012." The subpoena also sought all "records, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including but not limited to all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to your actions as a crewmember of JetBlue Flight 412 on September 21, 2012." (Doc. # 1, Exh. A - Administrative Subpoena). On February 11, 2013, Tinney's counsel sent a letter to Attorney Brendan Kelly informing him that Tinney would not appear as the subpoena was invalid and unenforceable. On June 14, 2013, the FAA filed a petition for Summary Enforcement of an Administrative Subpoena. On November 26, 2013, Magistrate Rush issued an Order to Show Cause, requiring Tinney to appear in Court on January 23, 2014 to demonstrate why he should not be compelled to obey the subpoena. On January 23, 2014, Magistrate Rush held a show cause hearing. The Court heard testimony from Raymond Sanford, Supervisory Aviation Safety Inspector with the New York Flight Standards Office. On January 31, 2014, the United States filed a response to Tinney's Opposition and on February 10, 2014, Tinney filed reply suggestions. On April 28, 2014, Magistrate Rush issued a Report and Recommendation that the petition for enforcement be granted and Tinney's request for a protective order be denied. On May 16, 2014, Tinney filed objections to the Report and Recommendation. On May 21, 2014, the United States filed a response to the objections and on May 28, 2014, Tinney filed reply suggestions.

## II.    Show Cause Hearing

During the Show Cause Hearing, Inspector Sanford testified that a claim could be

3

rejected from the ASAP program in cases involving intentional disregard for safety, substance abuse, criminal activity, alcohol or intentional falsification of information. (Transcript, p. 12-13). Sanford also testified that even though there was an ASAP program, the FAA is still required to conduct an independent investigation. (Transcript, p. 13). Sanford testified that the FAA investigators are not allowed access to any information gathered through the ASAP process. (Transcript, p. 14). When asked if the FAA intended to use the ASAP information in its investigation, Sanford replied;

> A. We don't have access to the ASAP information. The ERC, the Event Review Committee, looks at the unsanitized reports. We don't see them. And they conduct their own investigation. They're required to. Independent to that, the FAA conducts an investigation outside of ASAP. We don't utilize that data.

(Transcript, p. 14).

When asked why the FAA needed to depose Tinney, Sanford replied that the FAA had not completed its investigation and there remained a lot of unanswered questions about what transpired during the 36 minutes in question. Sanford stated that as part of its investigation, the FAA needs to talk with the crew. He stated that it doesn't necessarily mean that an enforcement was going to come out of the investigation, but it is a requirement that the FAA conduct an investigation and part of that process involves talking with the crew. (Transcript, p. 15). When asked during cross-examination if he would have had access to the ASAP data, Sanford replied:

> A. That's privileged information and that's to be held by the Event Review Committee. The only data that anybody outside of that would see would be sanitized reports with no pilot's names on them.

(Transcript, p. 19).

Sanford clarified that even though an FAA representative sits on the Event Review Committee, the FAA representative is not allowed to share the information that they glean from the ASAP investigation with the FAA office. (Transcript, pp. 23-24). Mr. Sanford also stated that pilots had an incentive to participate in the ASAP program, because if their report is accepted, then they are protected from enforcement. (Transcript, p. 25). Sanford testified that acceptance into the ASAP program provides pilots with immunity. But, if the pilot's report is subsequently rejected, then the protection no longer applies. (Transcript, p. 31-32).

### III. Magistrate Rush's Report & Recommendation

In analyzing whether the administrative subpoena should be enforced, Magistrate Rush noted that the test for determining enforcement was set forth in United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). In that case the court held that an agency must show: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to that purpose, [3] that the information sought is not already within the [agency's] possession, and [4] that the administrative steps required by the Code have been followed. . . ." Id. Magistrate Rush noted that if the agency makes out a prima facie case for enforcement, the burden shifts to the respondent to "disprove one of these elements or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process." United States v. John G. Mutschler & Assoc., Inc., 734 F.2d 363, 367 (8th Cir.1984)(citing United States v. Lask, 703 F.2d 293, 297 (8th Cir.1983)). Magistrate

5

Rush concluded that the FAA had a legitimate purpose for the investigation, the request for the testimony and documents is relevant to the purpose and the FAA does not already possess the information sought in the subpoena. Magistrate Rush concluded that there may be some overlap between the documents and testimony that Tinney provided to the ERC and the information being requested by the subpoena, but the Court found this duplication would not be "overly burdensome" to Tinney. The Court also found that there was no evidence that the FAA failed to comply with its own rules. The Court concluded that Tinney did not meet his burden to disprove any of the elements under Powell nor did he demonstrate that it would be an abuse of process for the Court to enforce the subpoena. (Report and Recommendation, p. 7). The Report and Recommendation also found that issuance of a protective order was unnecessary because the administrative subpoena does not seek ASAP or ERC reports and neither side had represented that documents or testimony would be filed with the Court.

## IV. Legal Standard

In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court stated that to obtain enforcement of an administrative summons, the agency had to show that:

> [1] the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed.

Id. at 58.

"If an agency has satisfied these requirements for an administrative subpoena,

6

the burden shifts to the respondent to show that judicial enforcement 'would amount to an abuse of the court's process.'" U.S. v. Whispering Oaks Residential Care Facility, LLC, 673 F.3d 813, 817 (8th Cir. 2012), (quoting EEOC v. Peat, Marwick, Mitchell & Co., 775 F.2d 928, 931 (8th Cir.1985)). In Powell, the Court stated that "[s]uch an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taypayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Id. at 58. In U.S. v. Beacon Aerospace Corp., No. 3:99-MC-146(EBB), 2000 WL 92350 (D.Conn. Jan.11, 2000), the Court stated:

> The standard for judicial enforcement of an administrative subpoena is modest: the FAA need only show that its subpoena was issued for a legitimate, congressionally-authorized purpose, that the information sought is relevant to that purpose, that it does not already possess that information, and that proper procedures have been followed. . . .Although the FAA brought this petition to enforce its subpoena, the respondent's opposing enforcement . . . must shoulder the burden of showing that the subpoena is unreasonable, or was issued for an improper purpose, or that compliance would be unnecessarily burdensome.

Id. at *2 (internal citations and quotations omitted).

### V. Tinney's Objections to the Report and Recommendation

**1. The FAA Possessed the Information**

Tinney argues that the determination in the Report and Recommendation that the FAA does not have the information is "erroneous because the record establishes not only that the FAA had a representative on the ERC who was actively involved with the ASAP investigation and obtained the exact same information that is sought in the

7

administrative subpoena." (Tinney's Objections, p. 7). In support of this assertion, Tinney cites to the testimony of Sanford and states that he testified that an FAA Inspector served on the ERC committee and he actively investigated the same issues relating to Flight 412, as the FAA is attempting to investigate, so it "cannot be said that the FAA does not already possess the information sought by the subpoena." (Tinney's Objections, p. 8).

The Court disagrees that the FAA already possesses the information. The testimony of Mr. Sanford clearly establishes that even though an FAA representative served on the ERC Committee, this individual did not share any of the information or records he obtained with anyone else. Mr. Sanford testified that the FAA does not have access to any of the ERC's data. He stated: "We don't have access to the ASAP information. The ERC, the Event Review Committee, looks at the unsanitized reports. We don't see them. And they conduct their own investigation. They're required to. Independent to that, the FAA conducts an investigation outside of ASAP. We don't utilize that data." (Transcript, p. 14). Thus, the Court finds that the testimony of Mr. Sanford directly refutes Tinney's argument that the FAA already has the knowledge of what was reported to the ERC committee.

Additionally, Tinney argues that in the case of In re Air Crash at Lexington, Kentucky, August 27, 2006, 545 F.Supp.2d 618 (E.D.Ky.2008), the Court held that ASAP reports were not protected by a statutory, regulatory or common law privilege. The plaintiff in that case was seeking to depose an airline employee about the airline's

8

ASAP program. The airline moved for a protective order and to quash the deposition, arguing that the disclosure of the ASAP reports was prohibited by statute and the documents were protected by a common law privilege. The Court found that there was no statutory, regulatory or common law privilege which protected the ASAP reports from disclosure. In that case however, the reports were disclosed to the plaintiff under the protection of a confidentiality order. Id. at 621. Tinney argues that because the plaintiff in a negligence action could obtain the ASAP reports, the FAA could also obtain the ASAP reports in this case. However, the Court rejects this analogy.

In Fresenius Medical Care v. U.S., 526 F.3d 372 (8th Cir.2008), the plaintiff argued that the subpoenas were unreasonable because they were requesting documents which had already been given to the Government in previous investigations. The Court rejected that argument and found that because plaintiff had not identified which subpoenaed documents were already in the government's possession, it was not an abuse of discretion for the Court to refuse to modify the subpoena. Id. at 377. Similarly, in Powell, the Court found that it was not an abuse of the court's process for records to be produced, which had already once been examined. Powell, 379 U.S. at 58. In this case Tinney has not shown that the documents and testimony sought by the FAA's subpoena are exactly the same as those which were provided to the ERC committee. The FAA may be asking for additional or different information than what Tinney provided to the ERC. Additionally, the Court finds that simply because the documents are not privileged does not show that the FAA could otherwise obtain them.

9

Mr. Sanford testified that the ASAP reports are not available to the FAA. Therefore, the Court overrules Tinney's objection and finds that the Report and Recommendation was not erroneous because the record establishes that the FAA does not already have the information which is requested in the administrative subpoena.

### 2. Enforcement Circumvents the FAA's Own Policies

Tinney argues that use of an administrative subpoena in the context of an "ASAP accepted report, directed to the reporter thereof, allows the FAA to short-circuit any attempt at an independent investigation of the underlying incident, thereby depriving the reporter of the ASAP afforded immunity and forcing the reporter to assist the FAA in making a case against him." (Tinney's Objections, p. 11). Tinney argues that "[a]llowing the FAA in our case the ability to circumvent their promises of immunity for voluntarily participating in the ASAP process by getting a second opportunity to perform the indentical investigation is inappropriate and improper." Id.

The Court disagrees. The MOU between the FAA and JetBlue specifically states:

> 10h. Use of the JetBlue ASAP Report: Neither the written ASAP report nor the content of the written ASAP report will be used to initiate or support any company action, or as evidence for any purpose in an FAA enforcement action, except as provided in paragraph 11a(3) of this MOU. The FAA may conduct an independent investigation of an event disclosed in a report. JetBlue may conduct an independent investigation of an event disclosed in a non-sole-source report.
>
> 11. **FAA Enforcement and Company Action**
>
>   a. **Criteria for Acceptance** – The following criteria must be met in order for a report to be covered under ASAP:

10

(1) The flight crewmember must submit the report in accordance with the time limits specified under paragraph 6 of this MOU;

(2) Any possible noncompliance with 14 CFR disclosed in the report must be inadvertent and must not appear to involve an intentional disregard for safety; and,

(3) The reported event must not appear to involve criminal activity, substance abuse, controlled substances, alcohol, or intentional falsification. Reports involving those events will be referred to an appropriate FAA office for further handling. The FAA may use the content of such reports for any enforcement purposes and will refer such reports to law enforcement agencies, if appropriate. . . .

A thorough reading of the MOU reveals that it does not promise immunity - it only promises incentives to those who participate in the program. The MOU states that for those reports which are "accepted under the ASAP" the FAA will use a "lesser enforcement action" or "no enforcement action, depending on whether it is a sole-source report, to address an event involving possible noncompliance with 14 CFR." (MOU, ¶ 3). This policy is referred to in the MOU as an "enforcement related incentive." "JetBlue also provides an incentive for participation in the program by limiting the nature of company required corrective training for events disclosed via accepted ASAP reports." Id. Additionally, the MOU specifically states that the "FAA may conduct an independent investigation of an event disclosed in a report. JetBlue may conduct an independent investigation of an event disclosed in a non-sole-source report." (MOU, ¶10h). Thus, the Court finds that the MOU provides only incentives and does not make or provide any guarantees of immunity.

In Fresenius Medical Care, 526 F.3d 372, the plaintiff made a similar immunity

11

argument. The government in that case was investigating the plaintiff's use of the drug Epogen.  The plaintiff sought to have the government subpoenas  quashed or modified because it argued that it was entitled to rely on the government's assertion in a cold comfort letter that it did not intend to "initiate any investigation and/or to file or pursue litigation against" the plaintiff "based on the facts now known."  Id. at 376.  The Court rejected this argument and found that the letter did not immunize the plaintiff from further investigation relating to Epogen.  The Court found that the letter was based on facts that the government knew when the letter was drafted and did not preclude the government from later investigating plaintiff based on new facts.  Additionally, the Court noted that "allowing the preclusive effect [plaintiff] seeks would hinder the United States Attorney in carrying out lawful duties." Id. In the instant case, Tinney  had immunity for the one month period after his report had been accepted into the ASAP program, but once his report was rejected by the committee, the immunity was no longer in place.  There is nothing in the MOU which prevents the ERC from rejecting reports after they have been initially accepted into the program.  Thus, the Court overrules Tinney's objection and finds that enforcing the subpoena will not circumvent or contradicts the FAA's own policies.

### 3. Enforcement Fails to Protect Tinney's Reliance Interests

Tinney argues that in reasonable reliance upon the protections and immunities afforded to him under the ASAP, he provided the FAA with information that was otherwise unavailable to obtain based on its agreement not to seek enforcement action.

12

Tinney argues that he relied to his detriment on the FAA's agreement that it would not pursue enforcement action in exchange for his voluntarily submitted safety information. Tinney argues that enforcing the subpoena under these circumstances would be an abuse of the Court's process, because it would allow the FAA to breach the agreement that Tinney relied upon when he supplied the information.

However, the critical distinction that Tinney overlooks is that the protections and incentives provided for in the MOU apply only to reports which are *accepted* into the ASAP. Although Tinney's report was initially accepted into the ASAP program, for unknown reasons, the report was later rejected. There is nothing in the MOU that states that once a report is accepted, it cannot subsequently be rejected by the ERC committee. Additionally, the MOU specifically states that the "[t]he FAA may conduct an independent investigation of an event disclosed in a report. JetBlue may conduct an independent investigation of an event disclosed in a non-sole-source report." (MOU, ¶ 10h). Thus, because there is nothing in the MOU which prevents the ERC from rejecting a report, Tinney had no rights to rely on any incentives and/or protections in the ASAP program. Accordingly, the Court overrules Tinney's objection that enforcement of the subpoena would violate his reliance interests.

**4. Protective Order**

Tinney argues that the R&R is erroneous because the subpoena seeks the exact same information which was obtained through the ASAP program and without a protective order, there will be no incentive to voluntarily disclose safety information.

13

Tinney states that the subpoena requests the exact same information which was the subject of and obtained as a result of the ASAP investigation. Tinney argues that the ASAP is the method which the FAA obtains voluntary safety information based on an understanding and agreement that the voluntary information will be kept confidential and not used against the employee. Tinney argues that denying the protective order and allowing the discovery of the information will have a chilling effect on the FAA's ability to obtain voluntarily disclosures regarding safety information. Tinney argues that the Report and Recommendation's analysis of the ASAP makes the "promise of confidentiality" illusory. (Tinney's Objections, p. 18). He argues that allowing the FAA to circumvent and disregard the confidentiality protections of the ASAP effectively renders it devoid of meaning and obsolete.

The Court disagrees and believes that Tinney's reads too much into the MOU. There is no "promise" of confidentiality. Rather, the MOU only outlines an incentive for those individuals who report safety concerns to the ERC. The incentive also applies only to those individuals whose reports are "accepted" into the program. Furthermore, the MOU outlines several types of reports which are excluded under the program. Finally, there is no guarantee that once accepted into the program, a report cannot be subsequently examined and found not to comply with the program requirements. Additionally, the MOU states that both the FAA and JetBlue retain the right to conduct independent investigations of events disclosed in a report. In this instance, it is not known why the Tinney's report was initially accepted and then subsequently rejected by

14

the ERC committee.  However, what is clear is that there is nothing in the MOU which prevents the ERC from taking this action and there is nothing which prevents the FAA form initiating its own independent investigation.  Therefore, because the Court finds that the FAA in entitled to conduct this investigation, the Court agrees with the Report and Recommendation and finds no need for the entry of a protective order.

## VI.     CONCLUSION

Therefore, the Court, after independent review of the record and applicable law, adopts and incorporates by reference herein, Magistrate Rush's findings and conclusions.  The Court finds that Magistrate Rush correctly determined that the subpoena met the requirements of the Powell test. The FAA articulated a legitimate purpose for the investigation, the information requested in the subpoena is relevant to determining what happened during Flight 412, the FAA does not already possess this information and there is no evidence that the FAA has failed to follow its own rules in the ASAP process.  Additionally, the Court finds that Tinney has failed to sustain his burden to show that the subpoena is either unreasonable, improperly issued or is unnecessarily burdensome.   Accordingly, the Court hereby **GRANTS** the Government's Petition for Summary Enforcement of the Administrative Subpoena and **DENIES** Tinney's request for a Protective Order.


Date:  November 13, 2014                **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                   Fernando J. Gaitan, Jr.
                                        United States District Judge

16